International, et al. And we're about to get some lawyers on the screen here. I think we need one more lawyer. Yeah, for some reason, my video, there it is. Okay, here we are. There we go. Now I've got, first off, if you can hear me, please raise your hand. Okay, we've got everybody. This is set for 10 minutes aside. And I'm going to have trouble. I'm going to try to pronounce your name properly. Mr. McAvoy-Amaya, you go first. Yes. It's all yours. Yes, Your Honor. Good morning, Your Honors. May it please the court, I would like to reserve two minutes for rebuttal. Okay. This case is simple. My clients were denied their day in court, despite properly pleading their claims and supporting them with substantial evidence. Cases are supposed to be determined on the merits. Mendoza 1 was dismissed on summary judgment. The case was originally pled in state court. The defendants were moved for complete preemption pursuant to Section 301 of the LMRA. The claims were for breach of contract. All of the elements were met. The district court did not view the evidence in the light most favorable to Mendoza when granting ATU summary judgment. The district court made several factual conclusions critical to its decision to grant summary judgment in defendants favor. First, the district court found that the 2012 local 1637 bylaws were the operative bylaws because Mendoza initially believed they were before the investigation into his pay had actually occurred. And I just ask at the outset, do you agree that a recent decision in Garcia settles the jurisdictional question under 301? With regards to that, I do not believe that decision is correct. I do not think that the ruling in regards to changing the condition precedent language that followed only if in lingual is permissible. That's what the prior... My question is not whether you thought Garcia was correctly decided. I do think that if it applies, it is resolved. Yes. Okay. Yes. The district court made several factual conclusions critical to the decision. First, the district court found that the bylaws were operative, the 2012 bylaws were operative. However, based on Mendoza's initial belief that they were. However, the relevant inquiry under the International Constitution, which is what the breach of claim was, was whether or not the local executive board and the locals membership voted to approve the 2012 bylaws before ATU approved them. I'm not sure. I mean, does it really matter? Does an addition of the word respective really changed the meaning of the phrase? What it makes it ambiguous and because a local union is permitted discretion in interpreting its own bylaws. Mendoza was permitted to initially request approval of making this interpretation from the International. He then requested approval from the local executive board and then put it in the budget and the membership approved the budget numerous times. And so as the Department of Labor concluded, this was not something that was done, you know, secretly. This was not something that was done impermissibly. He went to the local union, they approved it. He went to the executive board, they did not oppose it. They put it in the budget and the membership approved. Under those circumstances, the interpretation of the bylaws by the local union is entitled to deference. The only years later when when a dispute over a collective bargaining agreement issue occurred at the local between the international and the local union, then the international steps in and decides that this decision that they had years notice of is somehow improper. And the Department of Labor has had concluded concluded precisely the opposite conclusions of the district court based on the same evidence indicating that at the very least there is a disputed issue of material fact that was that was sufficient for trial. With regards to the repayment of the local, the restitution order, the district court relied on an LMRDA case, which the court said would not be applicable to this case in the prior denial of the motion to dismiss and an estate bar case, both of which held that restitution orders post due process hearings were permissible. This is a restitution order, alleged restitution order, which we say is a fine that occurred before any due process was occurred. And then again, after the that Haley made all of his decisions based on an inapplicable version of the bylaws that was never approved by the local and that Mendoza's decision to interpret the bylaws that that he had viewed prior to that amendment was permissible because he ran it through the international ran it through the Fourth, the court determined that 12.6, section 12.6 of the ATU constitution did not require the ATU international to charge Mr. Mendoza with misconduct and afford him a due process hearing. When analyzing the provision, it ignored the part of the provision that expressly stated that when the and suspends them from office, they shall provide notice of charges and a hearing on the misconduct issue. Fifth, the court, the district court held that the ATU's interpretation of section eight was not in bad faith, despite the fact that we presented several letters where they made the exact opposite interpretation of the provision, and a case, a civil case like this one, where the ATU made the exact opposite representation to the court. If that's not evidence of bad faith interpretation, ATU making different interpretations of the same provision, when it benefits them in different cases, what is? And finally, ultimately, when dismissing Mendoza or when when granting summary judgment in the Mendoza case, the court's, you know, ultimate conclusion was that ATU's actions were reasonable. The problem with this is that's an LMRDA standard. This case was preempted by section 301 of the LMRA. There is no claim splitting. Mendoza two was brought by all the members of the local 1637 executive board. It was the district court dismissed the claims against ATU for claim splitting after a final judgment in Mendoza one, citing the extremely narrow adequate representation exception that applies to fiduciary and agency ruling occurred at a time when Mendoza one was still pending. No, that that is not correct, Your Honor. Mendoza one was dismissed. First, it was dismissed in May of 2019. And then afterwards, Mendoza two was ruled on some on on on summary judgment and Mendoza one came first. And then the the decision for claim splitting came after. So we're just so we're just dealing with an ordinary race to the coder preclusion ruling under 1738. Then, absolutely, that is that is our position. And the district court expressly acknowledged that rescue Dakota did not apply in its order on our motion for reconsideration. It said, even though dismissal of Mendoza one or Mendoza two would not operate as rescue Dakota claim splitting is about duplicative lawsuits. And the court said it could just dismiss Mendoza two just because it was duplicative, without considering any of the rescue Dakota principles were 1738 race to Dakota question. It doesn't I don't think that helps you. I don't think I don't think you're in a better position because of that. With with regards to rescue Dakota, the the second action is is based on entirely different law, it involves a, you know, a number of different plaintiffs all alleging individual lmrda claims that they could not have brought in the other act. And it alleges conduct that occurred after the pleading of Mendoza one, resulting in at least some of the claims the lmrda claims on the individual on the other individual members, the defamation claim, and several of the other claims, surviving the rescue Dakota ruling the only the only issues that wouldn't result in that is, is the trusteeship claim. I'm sorry, I missed I didn't hear you. The only claim is you said something I didn't hear it. What claim? On the rest of the trusteeship claim is a trusteeship claim. Yeah. Um, and further when consolidating the two cases, the court acknowledged that the that the that the principles of the doctrine exist for we're no longer at issue. My time is up. Okay, let's hear from the other side. We'll give you a chance to respond. And the other side split this up. And boy, we've got three lawyers in 10 minutes. Boy, that's going to be us angels dancing on ahead of a pin. Miss Pulliam, I've got you down for five minutes. Yes, that's correct, Your Honor. So let's put five minutes on the clock. Angels on ahead of a pin figuratively speaking. It's all yours. Thank you. May it please the court. I'm April Pulliam for the ATU defendants. I'd like to note at the outset that plaintiff's assertion that there had been a final judgment in Mendoza one at the time that Mendoza two was dismissed for claims splitting as to ATU defendants is flatly incorrect that Mendoza one case was still pending. That was my, that was my understanding. And but then that puzzled me because I don't understand why the additional plaintiffs and Mendoza two lose their right to assert claims, simply because somebody else sued on them first. I mean, why weren't they left in the the cases were consolidated just leave them in with the ability to assert claims. I didn't understand why they were forced into this representative capacity. And Judge Collins, the district court here concluded that those plaintiffs were barred under two exceptions to the general rule against non-party claim preclusion. That's because those plaintiffs both were acting as proxies to relitigate Mr. Mendoza's claims and because those plaintiffs were adequately represented by Mr. Mendoza in the first action. It wasn't a final judgment. And there's no, there's no preclusion. So there's no, I don't understand why they can't assert whatever claims they want to assert. Well, Your Honor, the claim splitting doctrine grows out of the claim preclusion doctrine as this court made clear in Adams. So the same exception. They didn't split their claims, they just brought one lawsuit. His claims, that was a problem. Right. Your Honor, the executive board plaintiffs here have alleged no harm that is unique to themselves. They are simply relitigating the same harms that Mr. Mendoza brought in Mendoza one. If you look at the facts of the complaint here, it's all about Mr. Mendoza and the imposition of the trusteeship, which is the precise harm that Mr. Mendoza sought to correct in the first action. And in that action, Mr. Mendoza expressly requested that the executive board plaintiffs be restored to the positions from which they were automatically removed when the trusteeship was established. So under these facts, the district court's conclusion that the new plaintiffs were simply proxies for Mr. Mendoza was proper. Also note that under the circumstances here, the Mendoza two complaint was filed along with a motion seeking the same exact injunctive relief that this court had denied just two days earlier in the Mendoza one action. And the procedures here strongly indicate that it's Mr. Mendoza who is controlling this litigation and who is attempting to redo the first action. And this is why it's clear that the executive board plaintiffs are simply proxies for relitigating Mr. Mendoza's claims. I guess I don't understand your argument that they're mere proxies. They do have just because they've suffered the same injury as Mr. Mendoza. I don't see how that by itself renders them proxies. Well, Your Honor, the only injury that they allege to have suffered is the fact of the trusteeship and their automatic removal from office. That's the exact same harm litigated in Mendoza one. And there, Mr. Mendoza was representing those plaintiffs' interests as he expressly represented to the court. The adequate representation exception under Taylor applies under those facts. You're blending together two completely separate exceptions. And I thought you wanted us to focus on the proxy exception. That's why I asked about that. Now you want to flip back to the adequate representation, which I think is weaker. So I'm not surprised you tried to shift to the proxy exception. Focus on that one and try to defend that ruling. Your Honor, both of those independent exceptions do apply. But because you've asked about the proxy exception specifically, courts have found under the facts very similar to the ones here, where a new plaintiff brings claims that simply repeating the original plaintiff's harm and alleging no harm unique to themselves, that they are proxies. What's your best case for the proposition that somebody who has suffered their own independent injury, that happens to be identical to some prior plaintiffs and then tries to sue to seek vindication of their own rights, has been found to be a mere proxy and therefore barred by some prior litigation by somebody else? What's your best case for that? Your Honor, I do want to make it clear. There's no independent injury that the Executive Board plaintiffs have suffered here. They're bringing the same exact claim as Mendoza 1. And challenges to trusteeships are derivative actions that are brought on behalf of the local union membership. And members are not permitted to bring successive trusteeship challenges. Once one person challenges a trusteeship, it's over and there's no right to challenge that. Again, this case is very similar to the Powell case cited in our briefs, where new plaintiffs with no independent harms to themselves brought a successive lawsuit and were found to be proxies. And I see my time has expired, so unless the Court has any questions, we'll just respectfully request that this Court affirm the judgments in both Mendoza 1 and 2. Any further questions for Ms. Pulliam? I've got next in order, Mr. Badu. When you're ready. I think somebody may be muted here. I apologize. I believe that we have made the arrangement, Mr. Compréhende, that we would both split the two and a half minute remaining. Right, so let's be very generous and put three minutes on the clock. I appreciate it, Judge Fletcher. I'll try to show off my best dance steps. Okay, there we go. All yours. I'm Laurent Badu. I represent the Kaolis Appellees in this matter. I'll just refer to them as Kaolis. I'm suffering a little bit from an Admiral Stockdale syndrome right now. Who am I and why am I here? What you've heard in terms of dispute clearly focuses on issues that are not related to the employer in this particular scenario. We were brought in in Mendoza 2 largely to create variety, if you will, in terms of the dance card to stick with the dance analogy. I will just focus on two elements that are somewhat unique to my clients because there are obviously a lot of materials elsewhere that I don't want me to tread upon again. One is a statute of limitation that was not complied with and barred the hybrid fair representation action for Mr. Mendoza. The second one is the civil conspiracy and RICO allegations that were unfounded as well. As far as the first one goes, it's abundantly clear that it's a six-month statute of limitation. Everybody's fully aware of that. This is nothing new. It's been long established. The main issue that we have with respect to it is that Mr. Mendoza has contended that there was some kind of fraudulent concealment of something, what I don't know, still two and a half years later, but somehow he should have gotten more time to file his action. Judgment in district court properly ruled that the six-month statute of limitation had no reason to be extended in this case and there was no affirmative evidence of why that would be. Just simply stamping fraud, concealment, or buzzwords do not make a federal cause of action. This is a little bit of a theme that we see in this particular litigation. There's a lot of words being bandied, but not a lot of evidence to support the allegations. That's very true in the second element, which is a civil conspiracy RICO allegations, where here again, we have an individual who has admitted in his deposition that, yes, management does not control the internal workings of the ATUs and the trusteeship that was imposed upon his local. And he admitted that he didn't want to return to work as a driver, was not eligible because he had lost his CDL, and essentially when was offered the opportunity to return to it, didn't take it and therefore was deemed to have abandoned his job. As Judge Mahan again stated clearly, ample evidence of why it was legitimate to terminate him. To simply suggest that later on, because there would be some negotiations occurring and some giving back and forth in a collective bargaining agreement of all things, that somehow that would support a quid pro quo is simply ludicrous. There was just no evidence for a jury to consider and a grand summary judgment was appropriate on the remaining issues dealing with the Keolis appellees. For those reasons, unless the court has any questions for me on these particular matters, we respect that the determination as to the appellees be upheld. Okay, thank you very much. And now, Mr. Compion, let's put three minutes on the clock for Mr. Compion. When you're ready. Okay, please, the court. Efren Compion for appellees. Mueller, Kaplan, Reyes, Opie, and Alexandra Chernyak in Salvador. Like Mr. Baddou, we're not sure why we're in this case in the first place. And based on the appellant's counsel's arguments, we haven't even been mentioned in any of the new arguments made on appeal. Today, we believe that the case against the auditing defendants was properly decided on the motion to dismiss. There were deficiencies in all the causes of action asserted against the auditing defendants, which the district court found. And in addition, we noted other deficiencies in our brief. Since the appellants have not addressed any of those arguments in our argument today, or added anything new, unless the panel has any questions for me, I think I will just conclude by saying that we believe that the district court correctly decided this matter on a motion to dismiss as to the Mueller-Kaplan defendants, and that the court should affirm that decision. Okay, no question from the bench. Okay, thank you. Let's put two minutes on the clock for rebuttal from Mr. Mendoza. Mr. McEvoy-Amaya. You're muted. You're muted, we're not hearing you. Sorry about that. I just wanted to correct my prior statement about the two different orders. They were done in the same order. I was incorrect on that. There was a lot of orders in this case. So I just wanted to make sure that that was corrected. But at the same time, while they're dismissing Mendoza 1, you know what the final order is going to be. So then there's just a res judicata issue with the claim splitting. You know, the claim splitting, you know, the basis for the claim splitting decision is the same principles as res judicata. There's the overlap. It's to preclude having to litigate two, you know, actions at the same time. So you're saying your opposing counsel said that my recollection was correct that the claim splitting ruling preceded the final judgment. No, they were simultaneous. Well, I thought the claim splitting ruling, I've been checking here, I thought it was November 5th, 2019. And it seems that the final judgment in Mendoza 1 is May 4th, 2020. Am I getting that wrong?  Okay. It is going to be appendix at 115. The claim splitting decision was made simultaneously with the dismissal of Mendoza 1. And with regards to the proxy exception and the adequate representation exception, LMRDA claims under Title 1 are considered like tort actions. This would be akin to a bus getting into an accident. Ten people are injured. The first person brings their action and everybody else... I'm saying that 115 is the motion for reconsideration of the claim splitting ruling. That seems to confirm that the original ruling was done earlier. Do you agree with that? That ruling... I apologize. My time is up. ER 160 is the original ruling on claim splitting. And that's back in September. I think you just have your dates mixed up, sir. Yeah, I think I just have the dates mixed up. Okay. But then it's not... If the ruling is done earlier, it's not a res judicata. If the claim splitting ruling proceeds, it would not be res judicata. But the principles behind both are identical. And again, the other plaintiffs are not barred for bringing their own tort claims simply because Mendoza brought first. The only claim that the claim splitting exception could possibly have applied to is the trusteeship claim. And in any trusteeship claim, you have to argue that the executive board should be returned. No matter what, every time you're going to argue that type of claim, you're going to argue the reinstatement of the board. With regards to the Keolis arguments, evidence was not an issue in pleading. Several of their claims were dismissed for failure to plead. Court needed to accept the allegations as true. The same goes for the MKA defendant's claims. The court just ignored the allegations. Okay. Thank you very much. Mendoza versus Amalgamated Transit Union International submitted for decision. Thank all attorneys for their helpful arguments. And we're in adjournment for the day and for the week. Thank you very much. Thank you.
judges: W. Fletcher, Watford, Collins